OPINION OF THE COURT
Louis C. Benza, J.
By order to show cause, defendant has moved for summary judgment dismissing this claim pursuant to CPLR 3212 (b) on the grounds that claimant failed to comply with section 145 of the State Finance Law.
State Finance Law § 145 provides that if a contractor accepts final payment under the contract, his claim will be waived unless (1) he serves a verified statement of claim upon the public body concerned (here, the New York State Department of Transportation [hereinafter DOT]) not later than 40 days after the mailing of the final payment, and (2) he institutes an action within six months of the mailing of the final payment.
Paragraph 5 of the claim asserts that a verified statement of claim was served upon DOT on September 21, 1982, "within forty (40) days after the mailing of the final payment by the State to claim [sic], which occurred on August 13, 1982”. The claim was personally served upon the Attorney-General and filed with the court on February 16, 1983. Thus, the State argues, the claim was filed more than six months after mailing of the final payment check and is, therefore, untimely pursuant to State Finance Law § 145. The court takes judicial notice of the fact that February 13, 1983 was a Sunday, and thus, claimant had until Monday, February 14, to file and timely serve its claim if the check mailed on August 13, 1982 indeed represented final payment.
In opposition to defendant’s motion, claimant’s president, Louis D’Angelo, Jr., submitted an affidavit in which he states that the claim erroneously sets forth that the final payment check was mailed on August 13, 1982 and was received by *656 claimant on August 16, 1982. Mr. D’Angelo asserts claimant received two checks subsequent to August 13, 1982, and thus the August 13 check was not the final payment check. Mr. D’Angelo avers that a $2,500 check was received from the State on August 27, 1982 as a result of completing contract item "Planting Obligations”. This sum claimant placed on deposit with the State pursuant to the terms of a completion contract. The return of said deposit was mandated upon the successful completion of the work.
Mr. D’Angelo further avers that he received a check on March 21, 1983 in the sum of $1,377.89, which represents interest on the final payment which had been mailed on August 13, 1982. Mr. D’Angelo states his belief that this check was mailed on March 18, 1983. It is Mr. D’Angelo’s belief that this check represents the final payment by the State to claimant. Thus, says Mr. D’Angelo, the claim served and filed February 16, 1983 was timely commenced as it was served and filed within six months of the mailing of the final payment check.
State Finance Law § 139 (3) provides that in order to obtain the total amount of estimated payments, a contractor, in lieu of having a retainage deducted from his contract payments, may deposit sufficient securities with the Comptroller or, if so directed by the Comptroller, with a bank or trust company which has entered into an agreement with the Comptroller and which will act as agent for the State.
In his supplemental affidavit, Mr. D’Angelo states that pursuant to State Finance Law § 139, claimant exercised this option and provided securities to be held by the State Bank of Albany as agent for the State, said items to be held in lieu of retainage.
In his affidavit, Mr. D’Angelo also stated his belief that said securities were returned to claimant after August 13, 1982, and that this payment may have constituted final payment under the contract pursuant to this court’s decision in Commander Elec. v State of New York (Ct Cl, Dec. 6, 1990, Benza, J., claim No. 79314, mot No. M-43003). Neither Mr. D’Angelo nor claimant’s counsel were able to provide the date said funds were mailed to claimant by the bank.
The issues presented for the court’s determination are: (1) whether the return of moneys deposited with the State pursuant to a completion contract is considered part of the final payment; (2) whether the payment of interest on the late *657 payment of final payment pursuant to section 38 (7) (g) of the Highway Law is considered part of that final payment for determining when the six-month Statute of Limitations under State Finance Law § 145 starts to run; and (3) whether the return of securities deposited pursuant to State Finance Law § 139 (3), in lieu of retainage, with a bank acting as agent for the State is considered part of the "final payment” for determining when the six-month period of limitations under State Finance Law § 145 starts to run.
I. MONEYS DEPOSITED PURSUANT TO A COMPLETION CONTRACT
As this court stated in Commander Elec. v State of New York (supra), section 109-12 of the Standard Specifications to the contract does not specifically define "final payment” but does define "final estimate” as follows: "The Commissioner will approve a final estimate for final payment based on the final agreement as prepared and approved by the Regional Director, less previous payments and any and all deductions authorized to be made by the Commissioner under the contract. Payment pursuant to such final estimate less any deductions authorized to be made by the Comptroller under the contract shall constitute the final payment and shall be made by the Comptroller.”
Thus, pursuant to claimant’s contract, the payment made pursuant to the final estimate constitutes final payment.
The State asserts, and it is not controverted by claimant, that the $2,500 check was the return of funds deposited pursuant to an uncompleted work agreement. Section 109-10 of the Standard Specifications provides as follows: "Whenever a contract shall in the judgment of the Commissioner of Transportation be substantially completed and in his judgment the withholding of the retained percentage would be an injustice to the Contractor, the Commissioner of Transportation may, provided the Regional Director certifies that the essential items in the contract have been completed in accordance with the terms of the contract and the provisions of Section 109-11, Final Agreement, direct the Regional Director to include in the final account such uncompleted items and pay therefor at the item prices in the contract upon the Contractor’s depositing with the Commissioner of Transportation a certified check drawn upon a legally incorporated bank or trust company equal to at least double the value of such *658 uncompleted work. The deposit may be used by the Commissioner of Transportation to complete the uncompleted portion of the contract and shall be returned to the Contractor if he completes the uncompleted portions with a specified number of working days after he has been notified to proceed with the work.” (Emphasis added.)
The court does not accept claimant’s counsel’s argument, presented in his supplemental affidavit in opposition that the specifications are contradictory. We find them clear and precise and, based on said finding, conclude that pursuant to claimant’s contract, the work to be completed under the uncompleted work agreement was considered completed work and was included in the final estimate and payment of August 13, 1982. Therefore, the court finds and concludes that the return of claimant’s deposit could not be considered part of the final payment as the payment was not made pursuant to the final estimate but was conditioned upon successful completion of the work pursuant to the work agreement entered into by the parties after the acceptance of the work performed under the underlying contract.
II. PAYMENT OF INTEREST ON LATE PAYMENT OF FINAL PAYMENT
We now turn to the check claimant received on March 21, 1983. It is uncontroverted that this check represents interest on the final payment.
Section 38 (7) (g) of the Highway Law provides as follows: "Final payment of the moneys due under a contract shall be made within ninety days after the acceptance thereof by the commissioner of transportation. In the event payment is not made within such period, interest thereafter at the rate of four per centum on the amount of the said moneys shall be paid to the contractor until the final payment is made, provided failure to make such payment, as heretofore prescribed, shall not be due to any fault, neglect, or omission on the part of the contractor or by reason of the filing of any lien, attachment, or other legal process against the money due said contractor.”
The special charge voucher clearly establishes that the check for $1,377.81 represents 120 days of interest at 4% on the final estimate of $103,342.10 on this contract and refers to section 38 (7) (g) of the Highway Law.
As previously stated, payment made based on the final *659 estimate constitutes final payment. As it cannot be determined at the time the final estimate is prepared that final payment will be made late, interest paid on such late payment cannot be said to be due the contractor as part of the final payment. In addition, in the absence of proof that the terms of the contract establish that interest would be due the contractor because of the late payment of the final payment under the circumstances presented, the contractor’s right to interest is derived from the statute and not from the contract. Therefore, the right not having been derived from the contract, it cannot be said that a right to interest derived from a source outside of the contract can be deemed an obligation of the owner to be paid under the contract as part of its final payment.
In his supplemental affidavit, claimant’s counsel refers the court to the current Highway Law § 38 (7) (f) and (g) as amended in 1984 and to sections 179-f, 179-k, and 179-Z of the State Finance Law which were all enacted by the Laws of 1984 (ch 153). Here, it is undisputed that the interest check was mailed prior to 1984. The new statutes cited by counsel are, therefore, not applicable. It is well to note that State Finance Law § 179-k confirms that the interest payment on the late payment of final payment is not to be considered part of the final payment as the interest paid does not affect the limitations of State Finance Law § 145.
III. RETURN OF SECURITIES HELD IN LIEU OF RETAINAGE
Based upon Mr. D’Angelo’s affidavit that securities in lieu of retainage were returned to claimant, and based on his inability to identify the precise date on which they were returned, the court notified the parties that pursuant to CPLR 3212 (c), a hearing would be held on April 1, 1991 to determine the issue of when the funds held in lieu of retainage were returned to claimant.
At the hearing, Mr. D’Angelo testified that the securities held by the State Bank of Albany were mailed to claimant on September 13, 1982.
As previously stated, claimant chose to deposit securities with the State Bank of Albany rather than having a retainage withheld from its payments. These securities were deposited as a guarantee for the release of retainage and, pursuant to the contract, they became part of the contract funds. Upon *660 submission of the final estimate, any amounts due and owing defendant because of a breach of contract on claimant’s part could have been credited against the securities (see, Snyder Constr. Co. v State of New York, 53 NY2d 613). The securities were under the control of the State, and the bank could not release them until claimant’s work was completed and authorization was received from the Comptroller. As no credit was due the State, the securities, which were part of the contract funds, were returned to claimant by the State (see, supra). Thus, the bank, in returning the securities, was acting as agent for the State, and the State, for the purpose of determining when final payment was made, was bound to the date on which the bank mailed the securities to claimant even if such mailing was not done expeditiously.
The court therefore adheres to its determination in Commander Elec. v State of New York (supra) wherein we held that final payment includes the payment of retainage. The “final payment” of the moneys owed to the contractor and held by the State was mailed to the contractor by the Comptroller on Friday, August 13, 1982. As August 16, 1982, the date on which the bank mailed its notice to the contractor, was the next business day following August 13, it is reasonable to infer that the Comptroller, at the time of mailing claimant the funds under his control, authorized the bank to release the securities held in lieu of retainage as constituting part of the final payment. Mr. D’Angelo’s uncontroverted testimony as well as the documentary evidence establish by a preponderance of the credible evidence that the securities were mailed on September 13, 1982, and that claimant comes within the parameters of this court’s decision in Commander Elec. v State of New York (supra).
Based upon the foregoing, we find that the return of the securities on September 13, 1982 constituted final payment pursuant to the contract (Standard Specifications § 109-12; State Finance Law § 145).
The court does not accept the State’s argument that the date of the return of the securities should be considered August 16, 1982, the date on which the bank wrote to claimant to inquire how claimant wished to dispose of the funds. Claimant’s expeditious response to this inquiry, by letter dated August 18, 1982, in no way delayed the processing of securing the release of the securities.
Pursuant to State Finance Law § 145, if a contractor accepts *661 final payment, the six-month Statute of Limitations begins to run not from the date of notification that the contractor is entitled to final payment, but from the date of mailing of the final payment (Triple Cities Constr. Co. v State of New York, Ct Cl, Jan. 13, 1989, Benza, J., claim No. 70425, mot No. M-39522, affd 161 AD2d 868, lv denied 76 NY2d 714; Fowler Elec. Co. v State of New York, 144 Misc 2d 110). Thus, the date of final payment was September 13, 1982, not August 16, 1982. Assuming, arguendo, that we accept defendant’s argument that the date of final payment was the date on which the bank notified claimant that the securities could be returned (Aug. 16, 1982), claimant’s claim would still be timely filed pursuant to State Finance Law § 145 since it was served and filed on February 16,1983, exactly six months from August 16, 1982.
Thus, we find that the claim served and filed on February 16, 1983 was timely and in compliance with State Finance Law § 145 and the contract. Therefore, the defendant’s motion to dismiss is denied.